UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.:
Magistrate:

MARICELIA SOTO,

    Plaintiff,

v.

MIAMI-DADE COUNTY, a political subdivision of
the State of Florida,
MIAMI DADE POLICE OFFICER KATHLEEN COLUMBRO,
Individually, and
MIAMI DADE POLICE OFFICER KIMBERLY LLAMBES,
Individually,

    Defendants.
_____/

## COMPLAINT

Plaintiff, MARICELIA SOTO, by and through her undersigned counsel, hereby sues Defendants, MIAMI DADE COUNTY, MIAMI DADE POLICE OFFICER KATHLEEN COLUMBRO, individually, and MIAMI DADE POLICE OFFICER KIMBERLY LLAMBES, individually, and in support there of states:

### INTRODUCTION

1. This is an action on behalf of Plaintiff MARICELIA SOTO (hereinafter "PLAINTIFF"), whose rights under the First and Fourth Amendments were violated when she was violently accosted by Miami Dade Police Officers in an elevator of a COUNTY building in violation of her civil rights secured by the Constitution of the United States.

2. This action for money damages is brought pursuant to 42 U.S.C. Sections 1983 and 1988, the

Mary Soto v. Miami Dade County, et al.
Case No.: TBD

First and Fourth Amendments to the United States Constitution, and under the laws of the State of Florida against Miami-Dade County and individual police officers.

3. It is alleged that the individual police officer defendants unlawfully arrested plaintiff, used excessive force, and violated her right of free expression.

## JURISDICTION AND VENUE

4. This action arises under the constitution and laws of the United States, particularly the First and Fourth Amendments to the United States Constitution.

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 and 1343, and on the supplemental jurisdiction of this court to entertain claims arising under state law pursuant to 28 U.S.C. Section 1367.

6. Venue is proper in this district because it is where the events complained of occurred.

7. All conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution including those set forth in Florida Statute Chapter 768.

## PARTIES

8. At all times material hereto PLAINTIFF was and is a resident of Miami-Dade County and at the time of the events described in this complaint is *sui juris*.

9. Defendant, COUNTY, is a political subdivision of the State of Florida, a Florida municipal corporation, and, at all times relevant hereto, it employed Defendant Officer Kathleen Columbro and Defendant Officer Kimberly Llambes.

10. At all times relevant hereto and in all actions described herein, Defendant, Officer Kathleen Columbro (hereinafter "COLUMBRO"), was acting under color of law as a police officer, and in such capacity, as the agent, servant and employee of Defendant, COUNTY.

11. At all times relevant hereto and in all actions described herein, Defendant, Officer

Page 2 of 13

Mary Soto v. Miami Dade County, et al.
Case No.: TBD

Kimberly Llambes (hereinafter "LLAMBES"), was acting under color of law as a police officer, and in such capacity, as the agent, servant and employee of Defendant, COUNTY.

## STATEMENT OF FACTS

12. On or about April 15, 2010, PLAINTIFF and her father were asked to attend a Board of Rules and Appeals ("BORA") meeting at the Miami-Dade Building Code Compliance Office ("BCCO"), located at 140 West Flagler, Floor 16, Miami, FL. The meeting was in regard to an unrelated action involving Sears and their possible liability for faulty air conditioning repair.

13. When PLAINTIFF and her father arrived for the meeting there was no one in the Board Room.

14. PLAINTIFF then went to the lobby and asked to speak with the Board Meeting Coordinator, Ms. Ivonne Bell.

15. Ms. Bell told PLAINTIFF that the meeting has been cancelled because Sears had been granted a continuance by BORA in an unrelated action. PLAINTIFF then asked to speak with BCCO supervisor, Jose Lescano. Instead, PLAINTIFF was allowed to speak to Kathleen Charles. Ms. Charles told PLAINTIFF the same information that Ms. Bell had relayed to the PLAINTIFF.

16. PLAINTIFF asked again to speak with BCCO supervisor, Mr. Lescano. Mr. Lescano then came out and spoke with PLAINTIFF about the issues surrounding her air conditioning repair action.

17. During this entire time period, PLAINTIFF and her father were seated and calm. At no point did PLAINTIFF or her father cause any disturbance.

18. At some point during PLAINTIFF and Mr. Lescano's discussion, Mr. Lescano turned

away and signaled toward the door. Mr. Lascano then moved away from PLAINTIFF and towards the front desk.

19. At this point, two (2) unidentified women approached PLAINTIFF and her father as they sat. Later these women were discovered to be Defendants COLUMBRO and LLAMBES.

20. COLUMBRO and LLAMBES ordered PLAINTIFF to step into the hallway. COLUMBRO/LLAMBES stated that they would take her out if she did not voluntarily move immediately.

21. PLAINTIFF asked if she was being threatened. COLUMBRO responded, "you've been told."

22. PLAINTIFF and her father calmly, quickly, and voluntarily got up and walked to the hallway and waited for the elevator.

23. As they waited, PLAINTIFF and her father stood facing each other as they waited for the elevator. PLAINTIFF carried a rolling cart containing files in one hand and her purse in the other; PLAINTIFF's father, an elderly man, had his arm in a sling from a recent shoulder fracture.

24. COLUMBRO and LLAMBES approached PLAINTIFF and her father as they waited in the hallway.

25. COLUMBRO and LLAMBES then proceeded to stand very close to and in the personal space of PLAINTIFF and her father. The hallway was not crowded as there were no other individuals in the hallway or waiting for the elevator.

26. When the elevator arrived the doors opened and PLAINTIFF's father entered the elevator first, followed by PLAINTIFF.

27. Immediately after PLAINTIFF was in the elevator COLUMBRO slammed PLAINTIFF's father in the chest and aggressively slammed him against the wall on which the elevator buttons were located.

28. At the same time, PLAINTIFF was slammed face first against the rear wall of the elevator by LLAMBES.

29. Fearing she would lose her balance, PLAINTIFF grabbed the handrail of the rear wall.

30. LLAMBES grabbed PLAINTIFF's right arm and COLUMBRO grabbed PLAINTIFF's left arm.  At this point both COLUMBRO and LLAMBES began to pull on PLAINTIFF's arms and beat her.  COLUMBRO and LLAMBES pressed PLAINTIFF's entire body very hard against the rear wall of the elevator and hit her repeatedly in her back, legs, arms, elbows, and hands.  During the entire time PLAINTIFF was being struck, she never made any aggressive moves towards either COMLUMBRO or LLAMBES.

31. PLAINTIFF asked the officers why they were beating her and begged them to stop. PLAINTIFF's father also pleaded with the officers to stop beating PLAINTIFF.

32. PLAINTIFF looked at her father and noticed his shirt was ripped and he was bleeding from his arm.

33. PLAINTIFF then began to cry and pleaded with the officers, stating "you hurt my father, he is bleeding, please do not hurt my father."

34. COLUMBRO and LLAMBES ignored both PLAINTIFF and her father's pleas to stop the physical abuse for the entire elevator ride from the sixteenth (16) floor to the lobby.

35. At no point did COLUMBRO or LLAMBES identify themselves as Miami Dade County Police Officers, inform PLAINTIFF that she was under arrest, read PLAINTIFF her

Miranda Rights, or inform PLAINTIFF of any charges being filed against her.

36. When the elevator reached the Lobby, PLAINTIFF was immediately handcuffed by COLUMBRO/LLAMBES.

37. COLUMBRO and LLAMBES dragged PLAINTIFF to the rear entrance of the building. The officers spoke with a female uniformed police officer and asked if they could borrow her patrol car as theirs was on route.

38. LLAMBES placed PLAINTIFF in the back of the loaner patrol car. The patrol car was parked at the rear entrance of the 140 W. Flagler Building in direct sunlight.

39. PLAINTIFF was left in the car for an hour with the windows up and with no ventilation before COLUMBRO and LLAMBES returned wearing brown police windbreakers.

40. LLAMBES then searched PLAINTIFF's purse and COLUMBRO searched her file cart.

41. When COLUMBRO and LLAMBES' patrol car arrived PLAINTIFF was again placed in the back of the patrol car with the windows rolled up and with no ventilation. The patrol car was parked in direct sunlight.

42. COLUMBRO and LLAMBES then began to drive north on I-95. They exited in what seemed to be Liberty City or Carol City. COLUMBRO and LLAMBES pulled the patrol car in the back of a facility with a high fence.

43. COLUMBRO and LLAMBES exited the patrol car and went into the building. They came out shortly thereafter with a man who would not let PLAINTIFF see his face.

44. COLUMBRO and LLAMBES spoke with the man for about an hour. During that time period, PLAINTIFF was in the back seat of the unventilated patrol car parked in the sun.

45. COLUMBRO and LLAMBES then got back into the car and drove to a police gas station.

46. PLAINTIFF began to feel dizzy and nauseous.  PLAINTIFF told COLUMBRO and LLAMBES that she was feeling ill.

47. COLUMBRO and LLAMBES then drove on I-95 South.

48. At this point, PLAINTIFF passed out in the back of the patrol car.

49. PLAINTIFF awoke to the LLAMBES throwing water in her face and frantically trying to get PLAINTIFF to drink water.

50. COLUMBRO and LLAMBES lifted PLAINTIFF out of the patrol car and ordered her to walk.   COLUMBRO and LLAMBES threatened to "make her life a living hell if she didn't walk on her own."

51. PLAINTIFF then collapsed.  COLUMBRO and LLAMBES picked up PLAINTIFF and walked her back to the patrol car.

52. COLUMBRO and LLAMBES then drove PLAINTIFF to Jackson Memorial Hospital.  COLUMBRO and/or LLAMBES told PLAINTIFF that "she was theirs and no one would help her so she had better do exactly what they said."

53. PLAINTIFF kept repeating that she had asthma.

54. Then COLUMBRO and LLAMBES took PLAINTIFF to the Police Station.  While at the Police Station, COLUMBRO twisted PLAINTIFF's wrist upward and said "I told you, now you better walk on your own or else."  PLAINTIFF followed the order and was then photographed and placed in a cell with other women.

55. The other women in the cell quickly noticed PLAINTIFF was sick and called for help.  No one came to help.  PLAINTIFF was given an inhaler by a woman in the cell and began to breathe normally.

## COUNT I
### State Tort of Assault and Battery
### (Against Defendant MIAMI- DADE COUNTY)

56. PLAINTIFF repeats and realleges Paragraphs 1 through 55, and incorporates them by reference herein.

57. Defendant COUNTY through its employees, COLUMBRO and LLAMBES intentionally caused bodily harm to PLAINTIFF by beating her in the elevator of the building located at 140 W. Flagler causing serious injury bodily to her person.

58. The actions of COUNTY through its employees COLUMBRO and LLAMBES aroused fear in the person of PLAINTIFF. The aforementioned assault and battery was accomplished without the consent and against the will of PLAINTIFF.

59. PLAINTIFF has complied with the notice provisions of Florida Statutes Section 768.28, which is a condition precedent to the filing of a state tort against COUNTY.

60. Defendant COUNTY is vicariously liable for the tortious acts of its employees that were committed within the scope and furtherance of their employment.

61. As a direct and proximate consequence of the acts of COUNTY through its' employees, COLUMBRO and LLAMBES, PLAINTIFF sustained severe physical injury, humiliation, emotional distress, pain and suffering, incurred substantial medical and other out-of-pocket expenses, and will continue to incur medical expenses in the future.

**62.** Pursuant to 768.28, Florida Statutes, PLAINTIFF notified Defendant MIAMI-DADE COUNTY of this claim prior to filing this action and said claim was not resolved.

**WHEREFORE**, PLAINTIFF prayerfully requests that this Honorable Court grant the following relief against the Defendant COUNTY:

   A. Compensatory damages;

B. Pain and Suffering;

C. Actual damages; and

D. Any other such alternative and additional relief that appears to the Court to be equitable and just.

## COUNT II
### State Tort of False Imprisonment and False Arrest
### (Against Defendant MIAMI-DADE COUNTY)

63. PLAINTIFF repeats and realleges Paragraphs 1 through 55, and incorporates them by reference herein.

64. On or about April 15, 2010, COLUMBRO and LLAMBES, while acting in the course and scope of their duties as a Police Officers employed by COUNTY arrested PLAINTIFF.

65. COLUMBRO and LLAMBES physically deprived PLAINTIFF of her freedom and liberty and restrained her in her movements in the elevator, at the scene of the arrest, in the patrol car, and at the Police Station.

66. PLAINTIFF did not consent to the aforementioned actions of COLUMBRO and LLAMBES and said actions were against the will of PLAINTIFF.

67. The restraint of PLAINTIFF by COLUMBRO and LLAMBES was unlawful and unreasonable in that it was not based upon lawfully issued process of Court and COLUMBRO and LLAMBES did not have a valid warrant for the arrest of PLAINTIFF.

68. Pursuant to 768.28, Florida Statutes, PLAINTIFF notified Defendant MIAMI-DADE COUNTY of this claim prior to filing this action and said claim was not resolved.

**WHEREFORE**, PLAINTIFF prayerfully requests that this Honorable Court grant the following relief against the Defendant COUNTY:

  A. Compensatory damages;

  B. Pain and Suffering;

  C. Actual damages; and

Any other such alternative and additional relief that appears to the Court to be equitable and just.

## COUNT III
### Excessive Force
### (42 U.S.C. §1983 Fourth Amendment Violation against Defendant COLUMBRO, Individually)

69. PLAINTIFF repeats and realleges Paragraphs 1 – 55, and incorporates them by reference herein.

70. This cause of action is brought by PLAINTIFF, against Defendant COLUMBRO for her use of excessive force under color of law that deprived PLAINTIFF of her constitutionally protected rights under the Fourth Amendment to the United States Constitution.

71. Defendant COLUMBRO violated Title 42 U.S.C. § 1983 by inflicting severe injury upon PLAINTIFF that was grossly disproportionate to the force necessary to arrest PLAINTIFF in violation of her rights under the Fourth Amendment to the U.S. Constitution.

72. Defendant COLUMBRO, while acting in her capacity as a police officer for COUNTY and under the color of law, did intentionally exert excessive force by beating PLAINTIFF in such a manner that PLAINTIFF suffered serious bodily injury.

**WHEREFORE**, PLAINTIFF prayerfully requests that this Honorable Court grant the following relief against the Defendant COLUMBRO:

    A.  Award compensatory damages;

    B.  Award reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988;

    C.  Award such other and further relief as this Honorable Court deems just.

**COUNT IV**
**Excessive Force**
**(42 U.S.C. §1983 Fourth Amendment Violation against Defendants LLAMBES, Individually)**

73. PLAINTIFF repeats and realleges Paragraphs 1 – 55, and incorporates them by reference herein.

74. This cause of action is brought by PLAINTIFF, against Defendant LLAMBES for her use of excessive force under color of law that deprived PLAINTIFF of constitutionally protected rights under the Fourth Amendment to the United States Constitution.

75. Defendant LLAMBES violated Title 42 U.S.C. § 1983 by inflicting severe injury upon PLAINTIFF that was grossly disproportionate to the force necessary to arrest PLAINTIFF in violation of her rights under the Fourth Amendment to the U.S. Constitution.

76. Defendant LLAMBES, while acting in her capacity as a police officer for COUNTY and under the color of law, did intentionally exert excessive force by beating PLAINTIFF in such a manner that PLAINTIFF suffered serious bodily injury.

**WHEREFORE**, PLAINTIFF prayerfully requests that this Honorable Court grant the following relief against the Defendant LLAMBES:

    D.  Award compensatory damages;

    E.  Award reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988;

F. Award such other and further relief as this Honorable Court deems just.

## COUNT V
**(Violation of Civil Rights While Acting Under The Color of Law for Failure to Intervene Under 42 U.S.C. § 1983 - Against Defendants LLAMBES and COLOMBRO)**

80. Plaintiffs repeat and re-allege Paragraphs 1 through 55, and incorporate them by reference herein.

81. This cause of action is brought by PLAINTIFF, against Defendants LLAMBES and COLUMBRO for their failure to intervene to prevent each other from violating the constitutional rights of PLAINTIFF.  Law enforcement officers have an affirmative duty to intervene when the officer is aware of constitutional violations in their presence and fails to take reasonable steps to protect the victim of another officer's use of excessive force.

82. LLAMBES and COLUMBRO failed to prevent excessive force from being committed against PLAINTIFF when they had a reasonable opportunity to do so.  The Defendants failure to intervene is a violation of the Fourth Amendment and as such is actionable under 42 U.S.C. §1983.

**WHEREFORE,** PLAINTIFF prayerfully requests that this Honorable Court grant the following relief against the Defendants:

A. Award compensatory damages;

B. Punitive Damages; and

C. Award such other and further relief as this Honorable Court deems just.

## DEMAND FOR JURY TRIAL

PLAINTIFF, Mary Soto, hereby demands a jury trial as to all issues so triable.

Dated:   April 14, 2014					Respectfully submitted,

							s/Gregory A. Samms
							Gregory A. Samms, Esq.
							*Lead Attorney for Plaintiff*
							FL Bar No.: 438863
							225 Alcazar Avenue
							Coral Gables, FL 33134
							FL Bar No.: 438863
							Tel:  (786) 953-5802
							Fax:  (786) 513-3191
							Email: sammslaw@gmail.com