UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 14-21307-CIV-WILLIAMS

MARICELIA SOTO,

      Plaintiff,

v.

MIAMI-DADE COUNTY, a political subdivision
of the State of Florida;
OFFICER KATHLEEN COLUMBRO,
OFFICER KIMBERLY LLAMBES, individually,

      Defendants.

_____/

## DEFENDANTS MIAMI-DADE COUNTY, OFFICER KATHLEEN COLUMBRO AND KIMBERLY NANNEY'S MOTION TO DISMISS COMPLAINT

Defendants Miami-Dade County, Officer Kathleen Columbro, and Officer Kimberley Nanney[1] move to dismiss the Complaint (DE 1) pursuant to Federal Rule of Civil Procedure 12(b)(6), qualified immunity and sovereign immunity.  As explained below, Plaintiff's allegations, if true, demonstrate the type of wanton and bad faith conduct that immunizes Miami-Dade County from suit because of its sovereign immunity as a political subdivision of the State of Florida.  With respect to the claims against the individual officers, Plaintiff cannot bring freestanding excessive force and failure to intervene claims for force used during an allegedly wrongful arrest.  For these reasons, and those stated below, the Complaint must be dismissed.

---

[1]      Due to a change in her marital status, Officer Kimberly Llambes should properly be referred to as Officer Kimberly Nanney.  However, to avoid confusion with the Complaint, this motion will refer to her as Officer Llambes when discussing the complaint's allegations.

## BACKGROUND

On April 15, 2010, Plaintiff Maricelia Soto was arrested for battery on a law enforcement officer and resisting an officer without violence. *See Arrest Affidavit* (attached as Exhibit A). Yet, Soto's Complaint glosses over the fact that she was arrested and thus omits the critical context in which the events described in the Complaint occurred. Under these circumstances, the Court may look to the arrest affidavit on a motion to dismiss and accept as true facts in the arrest affidavit that the complaint does not clearly contradict. *See Bloom v. Alvereze*, 498 F. App'x 867, 879 n.17 (11th Cir. 2012) (on motion to dismiss, making probable cause determination based on arrest affidavit); *Bello v. Johnson*, 442 F. App'x 477, 479-80 (11th Cir. 2011) (same); *Haire v. Thomas*, 219 F. App'x 844, 846 (11th Cir. 2006) (same); *see also Speaker v. U.S. Dep't of Health & Human Servs. Cntrs. for Disease Control & Prev.*, 623 F.3d 1371, 1379-80 (11th Cir. 2010) (district court properly relied upon exhibits to defendant's motion to dismiss where documents were central to plaintiff's claim and undisputed as to authenticity); *Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (district court may consider public records attached to motion to dismiss).

In this case, however, Defendants seek to introduce the arrest affidavit for the limited purpose of showing that Plaintiff was in fact arrested and is therefore required under Circuit precedent to assert claims for *false arrest*—not for excessive force in making an allegedly unconstitutional arrest.

According to the arrest affidavit, Detective Llambes and Sergeant Columbro were attending a Miami-Dade County BCCO [Building Code Compliance Office (Compl. ¶ 12)] hearing at 140 West Flagler Street. After the hearing ended at 2:40 p.m., the officers heard someone yelling in the front lobby and went to investigate. Jose Lezcano, a BCCO supervisor

(Compl. ¶ 16), told Plaintiff that the hearings were over and she would have to reschedule for a later date, but Plaintiff began screaming and causing a commotion. Detective Columbro then gave Plaintiff a lawful order to leave the building. Plaintiff initially refused. Plaintiff then began walking towards to elevators, continuing to yell and curse at the officers. Plaintiff then pushed Sergeant Columbro in the chest with her forearm. At this point, the officers advised Plaintiff that she was under arrest but Plaintiff refused to comply, tightening her arms in her front and refusing to place her hands behind her back. Plaintiff was eventually arrested and transported to jail. Plaintiff received a second trespass warning not to return to the BCCO office without an appointment.

The Complaint, however, does not mention that Plaintiff was placed under arrest. Instead, the Complaint alleges that when Plaintiff got into the elevator to leave the building, Officer Llambes slammed Plaintiff face first against the wall and that the officers struggled with Plaintiff on the way down the elevator, only handcuffing her once the elevator reached the lobby. *Compl.* ¶¶ 28, 30, 36.

The complaint alleges the state law torts of assault and battery (Count I) and false arrest (Count II) against Miami-Dade County. It also alleges excessive force under the Fourth Amendment pursuant to 42 U.S.C. § 1983 against Officer Columbro (Count III) and Officer Llambes (Count IV), and failure to intervene (Count V) and against Officers Columbro and Llambes.

## LEGAL STANDARD

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

3

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.*

In applying *Twombly* and *Iqbal*, the Eleventh Circuit has instructed the district courts to "eliminate any allegations in the complaint that are merely legal conclusions," and "where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (citations omitted). At this stage, "courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.*

"A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations – on their face – show that an affirmative defense bars recovery on the claim." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001). Immunity defense are properly adjudicated at the Rule 12(b)(6) stage because the plaintiff bears the ultimate burden of showing that an immunity should be abrogated. *See id.* at 1022-23. Indeed, the district court must "apply the affirmative defense of qualified immunity at the earliest possible stage in litigation because the defense is immunity from suit and not from damages only." *Id.* at 1022.

4

## ARGUMENT

**I.     PLAINTIFF'S STATE LAW CLAIMS (COUNTS I & II) ARE BARRED BY SOVEREIGN IMMUNITY**

The doctrine of sovereign immunity provides that Miami-Dade County is immune from suit under state law except in those circumstances where the State has given its consent to be sued. *See Cauley v. City of Jacksonville*, 403 So. 2d 379, 381 (Fla. 1981) ("Thus the general rule was that state governments, their agencies, and their subdivisions could not be sued in state courts without state consent.").  In 1973, Florida gave its consent to be sued in certain tort actions when the Florida Legislature enacted Fla. Stat. § 768.28.  The State, however, waived its sovereign immunity from liability for torts "*only* to the extent specified in this [statute]," Fla. Stat. § 768.28(1) (emphasis added), which established a set of conditions and limitations to suits. One such limitation is that a government entity cannot be sued where an "act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Fla. Stat. § 768.28(9)(a).  Sovereign immunity is an immunity from suit not just liability, and it "is a threshold issue that [the Court] must decide before requiring a [municipality] and its officers to answer a complaint against them."  *Seminole Tribe of Fla. v. Fla. Dept. of Revenue*, ___ F.3d ___, 2014 WL 1760855 at *3 (11th Cir. May 5, 2014).

Accordingly, Florida courts have routinely held that a governmental entity may not be held liable where its employee's actions were malicious, in bad faith, or showed reckless and wanton disregard for human rights, safety, or property.  *See, e.g.*, *City of Fort Lauderdale v. Todaro*, 632 So. 2d 655, 656-58 (Fla. 4th DCA 1994) (reversing verdict against city where jury found employee acted with willful disregard for safety); *Willis v. Dade County Sch. Bd.*, 411 So.

2d245, 246 (Fla. 3d DCA 1982) (affirming trial court's dismissal of complaint that alleged "malicious" assault and battery).[2]

The Complaint alleges that the officers ordered Plaintiff into the hallway, followed her into an elevator, and then slammed her face first against the wall.  *Compl.* ¶¶ 20, 24, 26, 28.  The officers then grabbed Plaintiff's arms, beat her, and hit her repeatedly in her back, legs, arms, elbows, and hands.  *Id.* ¶ 30.  The officers then handcuffed her and left her in a police car for an hour in the direct sunlight and without any ventilation.  *Id.* ¶ 39.  The officers later told Plaintiff that they would "make her life a living hell" if she didn't walk on her own and, after Plaintiff had collapsed for feeling dizzy and nauseous, the officers twisted her arm to get her to walk to the Police Station.  *Id.* ¶¶ 46, 50, 54.  What is more, the Complaint also alleges that Officer Columbro slammed Plaintiff's father in the chest and aggressively slammed him against the elevator wall, again for no apparent reason.  *Id.* ¶ 27.

In short, the Complaint alleges that two police officers attacked two peaceful citizens without any justification or provocation and made an arrest for no reason whatsoever and without any arguable probable cause.  These allegations can only be interpreted as malicious, in bad

---

[2]    Malice is "a wrongful act toward another without legal justification or excuse." *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1265 (S.D. Fla. 2004) (quoting *John B. Stetson Univ. v. Hunt*, 102 So. 637, 639 (Fla. 1924)).

"'Willful and wanton conduct is generally something more than ordinary negligence but less than deliberate conduct.' In order to demonstrate willful and wanton conduct, 'it must be shown that the defendant knew, or reasonably should have known in light of the surrounding circumstances, that his conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.'" *Keating v. City of Miami*, 598 F. Supp. 2d 1315, 1343 (S.D. Fla. 2009) *aff'd in part, rev'd in part, dismissed in part,* 598 F.3d 753 (11th Cir. 2010) (quoting *Lemay v. Kondrk,* 860 So.2d 1022, 1025 (Fla. 5th DCA 2003)).

6

faith, or showing reckless and wanton disregard for human rights, safety, or property.  Relying

solely on the Complaint's allegations, there is no good faith explanation for this behavior.[3]

"The question of whether an act was committed with malicious purpose, bad faith, or

with wanton and willful disregard is not a question that must be submitted to a jury, but rather,

can be decided by the Court depending on the facts."  *Blue v. Miami-Dade County*, No. 10-

23599-CIV, 2011 WL 2447699, at *2 (S.D. Fla. 2011); *accord Prieto v. Malgor*, 361 F.3d 1313,

1320 (11th Cir. 2004) (the Florida Supreme Court "explicitly disavowed the proposition that the

question of bad faith must always be submitted to the fact-finder"); *McGhee v. Volusia County*,

679 So. 2d 729, 733 (Fla. 1996) ("We emphasize, however, that this holding [that a factual

question must be presented to the jury] is based on the questions presented by the facts at hand.

*There may be cases in which summary dismissal would be proper based on different facts*.")

(emphasis added).  In making this determination, the Court must look to the factual allegations in

the complaint and ignore legal conclusions, which are not entitled to the presumption of truth.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

As Judge Huck noted in *Blue*, "'[c]ertain intentional torts 'cannot be characterized as

anything but acts committed in bad faith or with malicious purpose or in a manner exhibiting

wanton and willful disregard of human rights safety, or property.'"  2011 WL 2447699, at *2

(quoting *Dukes v. Miami-Dade County,* No. 05-22665-Civ-Huck/Simonton, D.E. 103 at 4 (S.D.

Fla. July 5, 2006)).  In *Blue*, the district court held, on a motion to dismiss, that an employee's

---

[3]     It should be noted that Miami-Dade County disputes the Complaint's version of events and accepts this version as true only as it must for purposes of a motion to dismiss. Plaintiff, on the other hand, is bound by the Complaint's allegations as judicial admissions.  *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1177-78 (11th Cir. 2009); *Hunt v. Liberty Lobby*, 720 F.2d 631, 649 n.29 (11th Cir. 1983); *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983); *Hill v. FTC*, 124 F.2d 104, 106 (5th Cir. 1941).

alleged actions in kicking a five-year-old child in the mouth and causing her to bleed to punish her for using the bathroom were malicious, committed in bad faith, or committed in a manner exhibiting wanton and willful disregard of human rights, safety and property.  The district court also rejected the plaintiff's argument that such a finding was improper simply because the complaint did not specifically allege bad faith, malice, or wanton and willful disregard.  2011 WL 2447699, at *1-3 (dismissing plaintiff's negligence claim against the County on the basis of sovereign immunity pursuant to Fla. Stat. § 768.28(9)(a)).

Other district courts have similarly found state law claims barred by sovereign immunity despite the plaintiff's failure to specifically allege malice, bad faith, or willful or wanton conduct.  *See, e.g.*, *Knight v. Miami-Dade County*, No. 09-23462-Civ-Graham, D.E. 34 at 10-11 (S.D. Fla. June 23, 2010) (Graham, J.) (dismissing battery claims against Miami-Dade County where officers were alleged to have acted without any concern for the "safety or welfare" of the plaintiffs); *Thomson v. Davenport,* No. 09-21708-Civ-Gold/McAliley, D.E. 59 at 9-10 (S.D. Fla. June 16, 2010) (Gold, J.) (dismissing Plaintiff's state law battery claim against the County after concluding that "the facts pled by Plaintiff – i.e., that Officer Davenport, without provocation, shot Plaintiff three times in the area of the left breast with his Taser gun notwithstanding the fact that she posed no threat of flight risk – exhibit a wanton and willful disregard of Plaintiff's safety as a matter of law."); *Terry v. Rodriguez*, 09-23726, 2010 WL 2342382, at *2 (S.D. Fla. June 7, 2010) (Hoeveler, J.) (dismissing claims against City of Miami where the "allegations can only equate with the kind of intentional, malicious misconduct by a state employee that does not give rise to municipal liability under Florida's waiver of sovereign immunity statute"); *Asprilla v. Trinidad*, No. 6:09–cv–101–Orl–28KRS, 2009 WL 2151156, *4 (M.D. Fla. July 14, 2009) (dismissing a battery claim against the city as barred by § 768.28(9) with prejudice on motion to

dismiss; rejecting plaintiff's argument that a question of fact remained as to whether actions were willful and wanton; and stating that plaintiff's "argument rings hollow in light of Asprilla's own pleading wherein she states that Trinidad 'intentionally push[ed] Asprilla down a flight of stairs'"); *Sanchez v. Miami-Dade Cnty.*, 06-21717-CIV, 2007 WL 1746190, at *1 (S.D. Fla. Mar. 28, 2007) (King, J.) (granting motion to dismiss and finding sovereign immunity barred plaintiff's claim that officers handcuffed him, instigated a fight between him and another citizen, and then abandoned him to walk home alone).

Accordingly, Counts I and II must be dismissed based upon the County's sovereign immunity.

## II.    OFFICERS COLUMBRO AND NANNY ARE ENTITLED TO QUALIFIED IMMUNITY ON THE § 1983 CLAIMS (COUNTS III, IV & V)

"That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (citation omitted). Qualified immunity is designed to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010) (citation omitted).

Qualified immunity is more than "a mere defense to liability." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S. Ct. 534(1991). Where applicable, qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). It is a "muscular doctrine" based in the premise that "officials can act without fear of harassing litigation only

9

when they can reasonably anticipate – *before* they act or do not act – if their conduct will give rise to damage liability for them." *Foy v. Holston*, 94 F.3d 1528, 1534 (11th Cir.1996).

Where, as in this case, an official was acting within the scope of his discretionary authority, the plaintiff bears the burden, even at the pleading stage, to show that qualified immunity should not apply. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). To do so, the plaintiff must allege facts sufficient to "make out a violation of a constitutional right" and must also show that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The district court is free to address the two parts of this inquiry in any order befitting the circumstances of the case. *Id.* at 236. If the court is on the fence about whether qualified immunity is appropriate, then it must give the government official the benefit of the doubt and afford her the protections of immunity. *Marsh*, 268 F.3d at 1030-31 n.8. Indeed, even a belief by the district court that "a hypothetical jury, considering all the complaint's alleged facts as true, *could* decide that the [officer] responded unreasonably is not sufficient to overcome the qualified immunity defense raised in a Rule 12(b)(6) motion." *Id.*

## A.   Plaintiff Cannot Bring Freestanding Excessive Force And Failure To Intervene Claims For Force Applied During The Course Of An Allegedly Wrongful Arrest

As an initial matter, Plaintiff's section 1983 excessive force and failure to intervene claims fail as a matter of law. The Eleventh Circuit has said, "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000). Where the plaintiff asserts that an officer used excessive force in effectuating a detention or arrest he had no right to make, it "is not a discrete constitutional violation; it is dependent upon and inseparable

from his unlawful arrest claim." *See Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006); *see also Jackson*, 206 F.3d at 1171.  In this case, Plaintiff complains that Officer Llambes slammed her face first against the wall of the elevator and that both officers pulled on her arms and beat her *before* she was placed in handcuffs.  *Compl.* ¶¶ 28, 30, 36.  Plaintiff further alleges that she was falsely arrested and imprisoned.  *Id.* ¶ 65.  But because Plaintiff is challenging the officers' use of force *prior to* her being put in handcuffs, her excessive force and failure to intervene claims are subsumed in her false arrest claim and therefore fails as a matter of law.  *See Bashir*, 445 F.3d at 1332.  Accordingly, Plaintiff's excessive force and failure to intervene claims must be dismissed and Plaintiff must re-plead the causes of action against the individual officers as a false arrest claim.[4]

**B.     The Officers Are Entitled To Qualified Immunity Because The Force Alleged In The Complaint Is Not Cleary Excessive**

Plaintiff alleges that the officers used force in the course of making an arrest in the elevator.  Plaintiff does not allege that the officers hit her or use any serious force against her *after* she was placed in handcuffs.  The issue therefore becomes not whether the arrest was supported by probable cause (which is the subject of Plaintiff's separate false arrest claim) but whether the Plaintiff has alleged force of such an excessive nature as to vitiate the officers' qualified immunity.  It is well-recognized in this Circuit that the "application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).  Indeed, even if the force was unnecessary, if "the actual force used and the injury inflected were both minor in nature . . . the application of the excessive force standard would *not* inevitably lead an official in [the

---

[4]     If, however, Plaintiff is willing to concede that the arrest was lawful, only then she may assert freestanding excessive force (or failure to intervene) claims for force applied prior to her being secured and in custody.

defendant's] position to conclude that the force was unlawful." *Id*. at 1256-57 (emphasis added) (discussing and quoting *Jones v. City of Dothan*, 121 F.3d 1456, 1460-61 (11th Cir. 1997) (per curiam)); *see also Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2013).

Moreover, the minor nature of an injury can reflect that minimal force was used.  *See Gold v. City of Miami*, 121 F.3d 1442, 1446-47 (11th Cir. 1997) (finding that officers were entitled to qualified immunity and stating "[t]he minor nature of this injury reflects that minimal force was used to apply the handcuffs.  Certainly, these circumstances would not 'inevitably lead' a reasonable officer in the officers' positions to conclude that the force used to apply the handcuffs was unlawful.").   Indeed, the Eleventh Circuit has found de minimis force and qualified immunity in the following circumstances:  where an officer put a foot on the plaintiff's face, who was lying face down on the pavement, after the Plaintiff raised his head and asked why he was being arrested, *Crosby v. Monroe County*, 394 F.3d 1328, 1334-35 (11th Cir. 2004); where the plaintiff had minor bruising after an officer grabbed him and shoved him a few feet against a vehicle while pushing a knee against his back and pushing his head into a van and searching his groin area in an uncomfortable manner, *Nolin*, 207 F.3d at 1258 n.4; where the plaintiff necessitated minor medical treatment after an officer kicked apart his legs, required him to raise his arms above his head, and then pulled the plaintiff's wallet from his pants, *Jones*, 121 F.3d at 1460; and where an officer placed tight handcuffs on the plaintiff's wrists for twenty minutes causing pain and skin abrasions, *Gold*, 121 F.3d at 1446.  *See also Bryan v. Spillman*, 217 F. App'x 882, 886 (11th Cir. 2007) (per curiam) (finding force to be de minimis where the plaintiff incurred temporary pain and no lasting injury where an officer conducted a "rough search" of the plaintiff's genitals, pushed him against a car, and held his head down against the car).

The Complaint does not allege that Plaintiff suffered any serious injuries or that the officers used force that was grossly excessive in making an arrest. Critically, it is also does not allege that the officers used any significant force after the Plaintiff was put in handcuffs. It does not allege that the officers used any weapons. It merely alleges that the officers forcibly restrained Plaintiff during a short elevator ride in which Plaintiff grabbed the handrail instead of putting her hand behind her back to facilitate the arrest. Requiring police officers to appear in federal court to explain every push, pull, or hit made in the course of arrest would bring about the very evil that qualified immunity is designed to prevent because police officers would be chilled in carrying out their discretionary duties. *See Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012) ("The purpose of qualified immunity is to protect officials from the chilling effect that a fear of personal liability would create in carrying out their discretionary duties").

### C.   No Clearly Established Law Prohibited This Amount Of Force In The Course Of Making A Custodial Arrest

Additionally, the conduct that Plaintiff describes in her complaint, such as being placed in a police car without air-conditioning, *Compl.* ¶¶ 39, 44, or being pushed, hit and slammed during a custodial arrest, *id.* ¶¶ 28, 30, does not violate clearly established law. Clearly established law can only be created by the Eleventh Circuit, the U.S. Supreme Court, or the Florida Supreme Court. *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003); *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003); *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996). Accordingly, Plaintiff must identify clearly established law on April 15, 2010, putting the officers on notice that the conduct alleged in the complaint was illegal. "[T]he preexisting law must give real notice of practical value to government officials, considering the specific circumstances confronting them, and not just talk of some generalized, abstract intellectual concept." *Pace v. Capobianco*, 283 F.3d 1275, 1282

13

(11th Cir. 2002).  "The facts need not be the same as the facts of the immediate case.  But they do need to be materially similar.  Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases."  *Adams v. St. Lucie Cnty. Sheriff's Dep't*, 962 F.2d 1563, 1575 (11th Cir. 1992) (Edmondson, J., dissenting), *approved en banc*, 998 F.2d 923 (11th Cir. 1993) (citation omitted).  Thus, it is Plaintiffs' burden to come forward with a specific, binding case that prohibits the conduct at issue:

> "For purposes of qualified immunity, an abstract mandate to act 'with care' or 'reasonably' is too vague." Generalities are just not helpful. To overcome the defendants' qualified immunity, plaintiffs must establish that the defendants' conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. "In satisfying this burden, the plaintiff cannot point to sweeping propositions of law and simply posit that those propositions are applicable."

*Sanders v. Howze*, 177 F.3d 1245, 1250 (11th Cir. 1999) (citations omitted).

Given the Eleventh Circuit's caselaw on *de minimis* force and the absence of any allegation of a substantial bodily injury here, Plaintiff can meet this burden.  *See Nolin*, 207 F.3d at 1255-56; *accord Croom v. Balkwill*, 645 F.3d 1240, 1252 (11th Cir. 2011) ("Though we are skeptical that the force alleged was truly necessary under the circumstances, we cannot find a constitutional violation based on its usage. Even if unnecessary, the force used against Croom was *de minimus*.").  In short, the preexisting law does not make it "obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue."  *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010).

### D.     The Complaint Fails To Adequately Allege A Failure To Intervene Claim (Count V)

Because the Complaint alleges only *de minimus* force, not excessive force, and does not allege that the officers violated any clearly established law, no duty to intervene arose in this case and Count V for failure to intervene must therefore be dismissed.

Moreover, the Complaint does not allege that either officer was in a position to intervene, which is an essential element of a failure to intervene claim. *Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir. 1998). A duty to intervene claim arises when one officer uses excessive force while another stands idly by. *Id.* at 1407. Here, however, the Complaint alleges that both officers took part in restraining Plaintiff in the elevator—not the one of them used force while the other just stood there. *Compl.* ¶¶ 27-36. Accordingly, even if the Court finds that Plaintiff states an excessive force claim, no duty to intervene exists based on the facts alleged here. County V must therefore be dismissed.

Dated: June 30, 2014.

Respectfully submitted,

R. A. CUEVAS, JR.
MIAMI-DADE COUNTY ATTORNEY

By: *s/ Ezra S. Greenberg*
Ezra S. Greenberg
Assistant County Attorney
Fla. Bar. No. 85018
Miami Dade County Attorney's Office
111 N.W. First Street, Suite 2810
Miami, FL 33128
Telephone: (305) 375-5151
Facsimile: (305) 375-5643
Email: ezrag@miamidade.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this June

30, 2014 on Plaintiff's counsel via CM/ECF.

<u>*s/ Ezra S. Greenberg*</u>
Assistant County Attorney

## <u>SERVICE LIST</u>

Ezra S. Greenberg
Assistant County Attorney
Email: ezrag@miamidade.gov
Miami Dade County Attorney's Office
111 N.W. First Street, Suite 2810
Miami, FL 33128
Telephone: (305) 375-5151
Facsimile: (305) 375-5643
*Attorney for Defendants*

Gregory A. Samms, Esq.
Email: sammslaw@gmail.com
225 Alcazar Avenue
Coral Gables, FL 33134
Telephone:  (786) 953-5802
Facsimile: (786) 513-3191
*Attorney for Plaintiff*